*In re* OLNEY'S ESTATE.
CLAIM OF BENNETT.

1. AUTOMOBILES — EVIDENCE — NEGLIGENCE — PROXIMATE CAUSE — DAMAGES.

> In action by plaintiff, a motorist, against estate of deceased motorist whose oncoming car was driven onto plaintiff's side of road, evidence sustained finding of trial judge that deceased motorist was guilty of negligence proximately causing accident and justified awarding judgment of $2,540.03 for personal injuries and property damages.

Per NORTH, C. J., and STARR, WIEST, BUTZEL, BUSHNELL, SHARPE, and BOYLES, JJ.

REID, J., dissenting.

---

Contributory negligence as a finding of fact by the trial judge sitting without jury, see 2 Restatement, Torts, § 284, comment a, § 434, comments b, c.

Negligent conduct of defendant, see 2 Restatement, Torts, § 284; function of court in determining contributory negligence, see § 476; causal relation to accident sufficient to bar recovery, see § 467.

2. ABATEMENT AND REVIVAL—SURVIVAL ACT—DEATH ACT.

The survival act is inconsistent with only that part of the statute amending the death act requiring that all actions for wrongful death or injuries resulting in death be thereafter brought only under the death act; otherwise the survival act continues in force (3 Comp. Laws 1929, § 14040; § 14061 *et seq.*, as amended by Act No. 297, Pub. Acts 1939).

3. SAME—SURVIVAL ACT—DEATH OF INJURED PARTY OR TORTFEASOR.

Under the survival act there is survival of a cause of action regardless of whether the death is that of the injured party or the tortfeasor (3 Comp. Laws 1929, § 14040).

4. DEATH—STATUTES—AMENDMENT OF DEATH ACT.

The purpose of the amendment to the death act was to enable a person to bring his action thereunder regardless of whether there was instantaneous death or survival of the injured person and to provide to what person or persons the damages recovered should be distributed (3 Comp. Laws 1929, § 14061 *et seq.*, as amended by Act No. 297, Pub. Acts 1939).

5. ABATEMENT AND REVIVAL—EXECUTORS AND ADMINISTRATORS—RIGHT TO SUE.

When the law declares that a cause of action shall survive, it is equivalent to saying that an executor may sue upon it, and that the estate of the deceased tortfeasor may be sued upon it.

6. DEATH—DAMAGES.

Under the death act as amended, damages are recoverable for (1) pecuniary injury resulting from the death to those persons who are entitled to such damages, (2) reasonable medical, hospital, funeral and burial expenses, and (3) reasonable compensation for the pain and suffering undergone by deceased (3 Comp. Laws 1929, § 14061 *et seq.*, as amended by Act No. 297, Pub. Acts 1939).

7. SAME—DAMAGES—LOSS OF WIFE—PECUNIARY INJURY TO HUSBAND.

In husband's action under the death act as amended for damages arising because of death of wife, while he has no legally enforceable claim to support or maintenance by deceased he was entitled to the value of her services less the reasonable cost of her maintenance (3 Comp. Laws 1929, § 14061 *et seq.*, as amended by Act No. 297, Pub. Acts 1939).

8. SAME—DAMAGES—MEDICAL AND FUNERAL EXPENSES.

While a surviving husband is legally liable for the payment of his wife's reasonable medical, hospital, funeral, and burial expenses, where he has recovered therefor in action brought in his own right he may not recover for them in action

brought as administrator of his wife's estate under the death act as amended (3 Comp. Laws 1929, § 14061 *et seq.*, as amended by Act No. 297, Pub. Acts 1939).

9. DAMAGES—DEATH OF WIFE—REMITTITUR—EARNING CAPACITY—PERSONAL INJURIES.

On appeal from judgment for $5,000 in nonjury action by plaintiff husband as administrator of his wife's estate, remittitur of that in excess of $3,000 is ordered where it appears husband and wife each had an expectancy of about eight years and she had general charge of summer resort hotel and cottages which they operated, her services being stated as worth $100 a month, and that she was dazed during first part of six days that she survived the accident in which she received injuries to her head, face, chest, abdomen and left leg; medical, hospital, funeral and burial expenses having been recovered by husband in action in his own right.

10. AUTOMOBILES—HEAD-ON COLLISION—CONTRIBUTORY NEGLIGENCE—QUESTION FOR TRIER OF FACTS.

In action by motorist, individually and as administrator of his wife's estate, for damages sustained in collision resulting fatally to motorist and his wife in other car as well as plaintiff's wife, question of whether plaintiff husband was guilty of contributory negligence was for trier of facts under the evidence which sustained finding for plaintiff.

11. COSTS—FAILURE OF EITHER PARTY TO SUSTAIN POSITION ON APPEAL.

No costs are awarded to either party on appeal in nonjury actions to recover damages, where neither has fully sustained the position asserted in the Supreme Court.

Per NORTH, C. J., and STARR, WIEST, BUTZEL, BUSHNELL, and BOYLES, JJ.

SHARPE and REID, JJ., dissenting.

Appeal from Kent; Brown (William B.), J. Submitted January 6, 1944. (Docket No. 43, Calendar No. 42,522.) Decided May 18, 1944. Rehearing denied June 30, 1944.

In the matter of the estate of John B. Olney, deceased. Separate claims by Edwin E. Bennett, individually and as administrator of estate of Margaret B. Bennett, for damages sustained in an automobile accident. Cross action by Viola Olney Christian, administratrix of the estate of John B.

Olney, deceased, for damages sustained in the same accident. Claims of Edwin E. Bennett allowed. Defendant appeals. Judgment for plaintiff. Defendant appeals. Affirmed.

*Herbert Hertzler* and *Searl, Messinger & White,* for plaintiffs.

*Allaben & Wiarda,* for defendant.

SHARPE, J. (*dissenting in part*). At the hour of about 4:30 p. m., on October 14, 1941, John B. Olney, a resident of Grand Rapids, was driving his automobile in a northerly direction on US-23 near Alpena. His wife was riding with him. At the same time, Edwin E. Bennett was driving his automobile on the same highway in a southerly direction. His wife was riding in the front seat with him and one Eunice Hawkins was riding in the back seat. The highway where the automobiles collided is of concrete structure and 22 feet wide. The two automobiles collided near the center of the highway and as a result of the collision, Mr. and Mrs. Olney were severely injured and Mr. Olney died within 24 hours after the collision. Mrs. Bennett was also severely injured and died six days after the accident.

Plaintiff, Edwin E. Bennett, filed a claim in the probate court of Kent county for the following damages and expenses:

"Alpena General Hospital for Margaret
    B. Bennett                                      $    82.71
  Spens Pharmacy, gangrene serum                        3.97
  Funeral expenses of Margaret B. Bennett            433.00
  Alma Kunz, R.N. for Margaret B. and
    Edwin E. Bennett                                   40.00
  H. G. Purdy, R.N. for Margaret B. and
    Edwin E. Bennett                                   40.00

| | |
|---|---:|
| Madeline B. Martinson, R.N. for Margaret B. and Edwin E. Bennett | 41.00 |
| Alpena General Hospital for Edwin E. Bennett | 103.35 |
| Wm. F. Carle, ambulance to Alpena | 15.00 |
| Frank Doane, wrecker service | 12.00 |
| Loss of 1938 4-door Oldsmobile Sedan | 600.00 |
| Loss of use of such automobile | 100.00 |
| Personal injuries, pain and suffering, disfigurement, permanent injuries, loss of time from business and earning ability of Edwin E. Bennett | 5,000.00 |
| Total .................................. | $6,471.03" |

Plaintiff, Edwin E. Bennett as administrator of the estate of Margaret B. Bennett, filed a claim in the probate court of Kent county for $5,000 for loss of prospective earnings and $5,000 for pain and suffering.

Defendant, administratrix of the estate of John B. Olney, deceased, filed an answer and cross action.

The probate court allowed the claims of plaintiff. Defendant appealed to the circuit court of Kent county. The cases were tried without a jury and a judgment was rendered for plaintiff Edwin E. Bennett, individually, in the amount of $2,540.03 and for plaintiff Edwin E. Bennett, as administrator of his deceased wife's estate, in the amount of $5,000.

Motion for a new trial was denied and defendant appeals. Defendant contends that plaintiff was guilty of contributory negligence as a matter of law; that the judgments are contrary to the great weight of the evidence and are excessive; that the court erred in failing to grant the estate of John B. Olney a judgment on its cross declaration against Edwin E. Bennett; and that under the present death act, the estate of Margaret B. Bennett, deceased, plaintiff, is not entitled to a judgment.

In considering this appeal, we shall first direct our attention to plaintiff's individual claim. The trial court found:

"The evidence conclusively establishes that the accident occurred on the west side of the highway; that claimant, Bennett, was driving on his right (west) side of the road; that the decedent Olney had been previously driving upon his right (east) side of the road and when about 35 feet from the point of impact had commenced to veer to the left, that when about 17 feet from the point of impact the left side of the Olney car crossed the center line of the highway and continued upon that side (the west side) of the road until the collision took place. * * *

"There is no evidence which explains or excuses the violation of the law and the rules of the road by Mr. Olney. The accident was the result of his driving upon his left side, the wrong side, of the highway. * * *

"The claimant, Mr. Bennett, was free from contributory negligence. He was driving upon his own right side of the road where he had the right and duty to be."

In determining the amount of damages to be allowed upon the claim of Edwin E. Bennett, individually, the trial court said:

"(1) Edwin E. Bennett, claimant as an individual, suffered a concussion, contusions on the head and shoulders, lacerations, was in the hospital approximately three weeks and suffered considerable pain during that period and for sometime thereafter and his injuries resulted in a double vision for a period of some two months.

"His bills for doctors, nurses and hospital for himself were $213.32. The bills for doctors, hospital, nurses and funeral expenses for Mrs. Bennett were $721.71. The damage to Mr. Bennett's car was $405,

making a total financial loss to Mr. · Bennett of $1,340.03.

"The law affords no rule by which damages for pain and suffering may be computed. The determination is not based upon how some person other than the injured person would feel or would suffer. It is determined by the extent of the suffering of the injured person, and where death occurs the injured person is not a witness. A nervous, unduly imaginative, despondent person may suffer more from a slight injury than would a composed, sensible person suffer who has serious injury, is not unduly apprehensive, and who commands a hopeful outlook. Without minimizing the fact of suffering, and having in mind the outcome of certain adjudicated cases, it would appear that the allowance of the sum of $1,200 would be a reasonable sum to be awarded to Mr. Bennett for his item of pain and suffering. This added to $1,340.03, his financial damages, would be $2,540.03, the total amount to be recovered by Mr. Bennett, individually."

A recital of the claims of the parties as to how the collision occurred would add nothing to the value of this opinion nor be of any particular interest to the profession. We have examined the record and in our opinion there is competent evidence to sustain the finding of fact by the trial judge that: "Mr. Olney must be held to have been guilty of negligence which was the proximate cause of the accident." Nor do we find any error in awarding plaintiff a judgment of $2,540.03 for his individual claim and the same is affirmed.

We now consider the issues involved in the claim of the estate of Mrs. Bennett. Decedent Olney died about 12 hours after the accident, while Mrs. Bennett died some five days later.

Defendant contends that under the present death act, so-called (Act No. 38, Pub. Acts 1848, as

amended by Act No. 297, Pub. Acts 1939 [Comp. Laws Supp. 1940, § 14061 *et seq.,* Stat. Ann 1943 Cum. Supp. § 27.711 *et seq.*]), the alleged tortfeasor Olney having predeceased Margaret B. Bennett, no cause of action for her death existed against any "person" at the time of her death; that there can be no cause of action against a corpse; and that no cause of action having existed, none could survive.

Plaintiff contends that a cause of action "for injuries resulting in death" to Mrs. Bennett exists against the estate of the wrongdoer Olney; that under the law of Michigan prior to the 1939 amendment to the death act, a cause of action existed for damages occasioned by a death caused by the wrongdoing of another against the estate of the wrongdoer; that it was not the intent of the legislature by amending the death act to take from families of persons killed by wrongful act of another a cause of action against the estate of the wrongdoer; that the purpose of the amendment was to abolish the distinction between instantaneous death and death following injury; and that there was no intent to change the liability of the tortfeasor.

At common law there was no civil cause of action for the death of a human being caused by the wrongful act or negligence of another, or for damages suffered by any person in consequence of such death. *Hyatt* v. *Adams,* 16 Mich. 180. Nor did the common law permit the survival of actions for personal injuries. *Dolson* v. *Railway Co.,* 128 Mich. 444.

As early as 1838, the legislature provided that in addition to actions which survive by common law, certain others shall also survive. Rev. Stat. 1838, p. 428, pt. 3, title 2, chap. 3, § 7. By Act No. 113, Pub. Acts 1885, an action for "negligent injuries to the person" was included among those actions expressly surviving. This provision now exists in 3 Comp. Laws 1929, § 14040 (Stat. Ann. § 27.684).

In 1848, the "death act," a typical "Lord Campbell's Act" (Act No. 38, Pub. Acts 1848), was passed and has remained unchanged until amended in 1939. Prior to this amendment, section 1 thereof (3 Comp. Laws 1929, § 14061) provided:

"Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages, in respect thereof, then and in every such case, the person who, or the corporation which would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured."

The interpretation of these acts became well established and is summarized in *Ford* v. *Maney's Estate,* 251 Mich. 461 (70 A. L. R. 1315), where the court said:

"Our survival statute, 3 Comp. Laws 1915, § 12383 (3 Comp. Laws 1929, § 14040), reads in part:

" 'In addition to the actions which survive by the common law the following shall also survive, that is to say, actions * * * for negligent injuries to persons.'

"The survival is not confined to actions commenced, but applies as well to rights and causes of action. A cause of action for negligent injuries, which accrues in the lifetime of a party, whether person injured or tortfeasor, survives his death. *Rogers* v. *Windoes,* 48 Mich. 628; *Norris* v. *Kent Circuit Judge,* 100 Mich. 256; *Love* v. *Railroad Co.,* 170 Mich. 1.

" 'When the law declares that a cause of action shall survive, it is equivalent to saying an executor may sue upon it.' *Rogers* v. *Windoes, supra.*

"It is also equivalent to saying that the estate of the deceased tortfeasor may be sued upon it. * * *

"The courts are in conflict upon the respective scope and operation of the death act and survival statute. L. R. A. 1915E, 1119, note; L. R. A. 1916C, 973, note. In this State it is held that the death act created a cause of action unknown to the common law, not by way of survival of a right accruing to the deceased which before had abated at this [his?] death, but as a new and special remedy accruing to those who suffered loss by the death; and that the legislature did not intend to give two remedies for death by negligent act, but that the death act and the survival act is each exclusive within its sphere. The line of cleavage between them is whether the death is instantaneous. The legal test of instantaneous death was devised in order to afford a practical working of the statutes, death being seldom instantaneous in fact. The test was established, not in an attempt to bring the acts into harmony with common-law principles but by way of judicial interpretation of legislative intention in the construction of statutes which change the common law and have points of conflict. *Sweetland* v. *Railway Co.*, 117 Mich. 329 (43 L. R. A. 568); *Dolson* v. *Railway Co.*, 128 Mich. 444; *Lincoln* v. *Railway Co.*, 179 Mich. 189 (51 L. R. A. [N. S.] 710); *Paperno* v. *Michigan Railway Engineering Co.*, 202 Mich. 257."

See, also, *In re Beiersdorfer's Estate,* 297 Mich. 592.

In 1939, the legislature passed Act No. 297, Pub. Acts 1939, which amended Act No. 38, Pub. Acts 1848, being 3 Comp. Laws 1929, §§ 14061, 14062 (Comp. Laws Supp. 1940, §§ 14061, 14062, 14062–1, Stat. Ann. 1943 Cum. Supp. §§ 27.711–27.713), which reads as follows:

"SECTION 1.   *   *   *   Whenever the death of a person or injuries resulting in death, shall be caused by wrongful act, neglect or default, and the act,

neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages, in respect thereof, then and in such case, the person who, or the corporation which would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony. All actions for such death, or injuries resulting in death, shall hereafter be brought only under this act.

"SEC. 2. Every such action shall be brought by, and in the names of, the personal representatives of such deceased person, and in every such action the court or jury may give such damages, as, the court or jury, shall deem fair and just, with reference to the pecuniary injury resulting from such death, to those persons who may be entitled to such damages when recovered and also damages for the reasonable medical, hospital, funeral and burial expenses for which the estate is liable and reasonable compensation for the pain and suffering, while conscious, undergone by such deceased person during the period intervening between the time of the inflicting of such injuries and his death:    *    *    *

"SEC. 3. Insofar as the provisions thereof are inconsistent with the provisions of act number 38 of the public acts of 1848 as amended by this act, section 32 of chapter 12 of act number 314 of the public acts of 1915, being section 14040 of the compiled laws of 1929 is hereby repealed."

There is no doubt that prior to this amendment plaintiff in the case at bar would have had a cause of action against defendant estate. However, it would have been the cause of action which vested in Mrs. Bennett during her lifetime and prior to the death of Olney and which under the survival act would have survived in her personal representative and against the personal representative of Olney.

The facts in the case at bar necessitate a determination of the nature of the cause of action created by the amended act; and whether, under the present statute, it ever vested in plaintiff.

In construing the act before us it must be presumed that the legislature knew the construction which this court had given to both the death and survival acts; that the death act, prior to amendment, created a cause of action unknown to the common law in certain beneficiaries and was premised upon the wrongful act and death; and that this cause of action for death was different in kind from that which was permitted to survive under the survival act.

The amended act expressly provides that "all actions for such death or injuries resulting in death, shall hereafter be brought only under this act." An examination of the amended act in the light of the former law clearly reveals that the legislature intended to wipe out the fiction of instantaneous death and create *one* cause of action where death results, either "instantaneously" or from injuries wrongfully inflicted; and that this cause of action is a *new* statutory action. This intent is found not only in section 1 of the amendment, but also in the title which reads in part, "An act requiring compensation for causing death and injuries resulting in death by wrongful act;" and from an examination of the liability created as indicated by a comparison of the damages recoverable under the death and survival acts prior to this amendment and under section 2 of the amendment.

The situation prior to the 1939 amendment was that where the action was brought under the death act, recovery was limited by the act to actual pecuniary loss suffered by one entitled to or receiving support from the deceased (see *In re Venneman's*

*Estate,* 286 Mich. 368) and funeral expenses (*Edgerton* v. *Lynch,* 255 Mich. 456). And where action was brought under the survival act (where the injured party survived even though only a short time), recovery was permitted of such damages as the deceased could have recovered had he lived to bring an action, such as conscious pain and suffering, loss of earnings sustained by deceased from the time of the accident until death and prospective loss from the date of death throughout the life expectancy of the deceased. See 18 Michigan State Bar Journal, p. 116.

The amendment makes no provision for recovery of the loss of earnings of the deceased either prior to his death or afterwards. It does provide for the "reasonable medical, hospital, funeral and burial expenses for which the *estate* is liable and reasonable compensation for pain and suffering, while conscious, undergone by such deceased person during the period intervening between the time of the inflicting of such injuries and his death." It also provides damages with reference to the pecuniary injury resulting from such death to those persons who may be entitled to such damages.

As further indication of its intent to create a new statutory cause of action in cases of death from injuries, the legislature provided in section 3 that insofar as the provisions of the survival act (3 Comp. Laws 1929, § 14040) are inconsistent with the provisions of the amended act, they are repealed.

We conclude that the amendment to the death act excludes the cause of action for injuries which the deceased party had during his lifetime from the operation of the survival act, when the injured party dies prior to the bringing of an action; that the amendment does not join in a single cause of action two separate causes of action for injuries and death

(see *Beauvais* v. *Springfield Institute for Savings,* 303 Mass. 136 [20 N. E. (2d) 957, 124 A. L. R. 611 and annotation]) but creates an entirely new statutory cause of action applicable to all cases where death results from wrongful act, whether occurring "instantaneously" or as the result of injuries. The legislature has made not only the wrongful act, neglect or default of the wrongdoer a necessary element in the cause of action, but also the *death* of the injured party is a necessary fact to the right of his representative to maintain an action under this amendment. Death is a part of the substance or essence of the right.

It inevitably follows that the cause of action for injuries resulting in death created by this statute does not arise or come into being until the death occurs. The cause of action which the injured party has for his injuries now abates upon his death, at which time the new cause of action in his personal representative created by the statute arises. The legislature has given a new right of recovery in substitution for the right which the injured party had during his lifetime, the basis of which is the same wrongful act, but which does not come into being until his death.

Was this action lost because tortfeasor Olney predeceased Mrs. Bennett? The statute provides that "the person who, or the corporation which would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured."

Plaintiff argues that the legislature did not repeal the survival act insofar as it permitted recovery against the estate of a tortfeasor; and that the legislature did not provide that an action for injuries resulting in death could not be brought against the *estate* of the wrongdoer. Defendant contends that

no cause of action existed against any *person* at the time of Mrs. Bennett's death; and that there can be no cause of action against a corpse.

The question is not whether an accrued cause of action abates because of the death of tortfeasor before an action is brought, as referred to in the dissenting opinion in *Re Mueller's Estate,* 280 Mich. 203, or whether it survives, but whether the statute imposes liability directly upon the administrator of the tortfeasor's estate.

In *Martinelli* v. *Burke,* 298 Mass. 390 (10 N. E. [2d] 113, 112 A. L. R. 341), defendant died before plaintiffs. The court had before it for construction a statute containing language similar to our own. It said:

"The wording of the statute is, 'a person who by his negligence or by his wilful, wanton or reckless act * * * causes the death of a person * * * shall be liable.' It has been stated repeatedly that no cause of action arises until the actual occurrence of the death for which recovery is sought. * * * When that event took place in each of the cases at bar the 'person' who, in the language of the statute, would 'be liable' was himself dead. 'It is axiomatic that a corpse is not a person.' *Brooks* v. *Railway Co.,* 211 Mass. 277, 278 (97 N. E. 760). A dead person cannot 'be liable,' nor can a cause of action arise against a person who does not exist. * * * There are no words in the statute which can be construed as creating a new cause of action against the administrator of the wrongdoer after his appointment. The actor himself and not his administrator is named as the 'person' who is to 'be liable.' The administrator of the person killed is in a different position. The statute is explicit in granting him the right to prosecute in behalf of the specified beneficiaries the cause of action which arose upon the death of his intestate. * * *

"The conclusion is inescapable that none of the actions can be maintained. That result has been reached in the only cases which we have seen dealing with the precise question and is supported by the reasoning in cognate cases. *Beavers' Administratrix* v. *Putnam's Curator*, 110 Va. 713 (67 S. E. 353); *Hegel* v. *George*, 218 Wis. 327 (259 N. W. 862, 261 N. W. 14): *Willard* v. *Mohn*, 24 N. D. 390 (139 N. W. 979); *Clark* v. *Goodwin*, 170 Cal. 527 (150 Pac. 357, L. R. A. 1916A, 1142): *Hamilton* v. *Jones*, 125 Ind. 176 (25 N. E. 192); *Bates* v. *Sylvester*, 205 Mo. 493 (104 S. W. 73, 11 L. R. A. [N. S.] 1157, 120 Am. St. Rep. 761, 12 Ann. Cas. 457); *Moe* v. *Smiley*, 125 Pa. 136 (17 Atl. 228, 3 L. R. A. 341); *Carrigan* v. *Cole*, 35 R. I. 162 (85 Atl. 934); *Johnson* v. *Farmer*, 89 Tex. 610 (35 S. W. 1062)."

For the reasons given in *Martinelli* v. *Burke, supra*, the amended death act does not impose liability upon the administrator of the tortfeasor's estate.

The claim of plaintiff Edwin E. Bennett as administrator of the estate of Margaret B. Bennett should be reversed, without a new trial and without costs as to either party.

North, C. J. I concur with Mr. Justice Sharpe in affirming the judgment in favor of Edwin E. Bennett, but I am not in accord with my Brother's holding that there can be no recovery in the suit brought by Edwin E. Bennett as administrator of the estate of Margaret B. Bennett, deceased.

Act No. 297, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 14061 *et seq.,* Stat. Ann. 1943 Cum. Supp. § 27.711 *et seq.*), does not repeal, but instead only amends, our so-called death act. 3 Comp. Laws 1929, § 14061 *et seq.* (Stat. Ann. § 27.711 *et seq.*). Nor does the 1939 act repeal our so-called survival statute (3

Comp. Laws 1929, § 14040 *et seq.* [Stat. Ann. § 27.684 *et seq.*]), except in so far as section 14040 is "inconsistent" with the 1939 act. And we do not find section 14040 at all inconsistent with any provision in the 1939 act, except that section 1 of the latter act provides: "All actions for such death, or injuries resulting in death, shall hereafter be brought only under this act." Section 14040 is still part of our statutory law, and this section reads:

"In addition to the actions which survive by the common law the following shall also survive, that is to say, actions of replevin, actions for the conversion of property, for deceit, for assault and battery, for false imprisonment, for negligent injuries to persons, for damages done to real and personal estate, and actions to recover real estate, or any interest therein, where persons have been induced to part with the same through fraudulent representations and deceit."

It follows that our statutory provisions for survival of actions still continues in force. And there is survival regardless of whether the death is that of the injured party, in which event the action may be brought by the representative of the estate of the deceased (*Racho* v. *City of Detroit*, 90 Mich. 92; *Rouse* v. *Michigan United Railways Co.*, 164 Mich. 475); or whether the death is that of the tortfeasor (*Norris* v. *Kent Circuit Judge*, 100 Mich. 256; *Ford* v. *Maney's Estate*, 251 Mich. 461 [70 A. L. R. 1315]).

Above we have stated that the 1939 act does not repeal the death act (3 Comp. Laws 1929, § 14061 *et seq.*, Stat. Ann. § 27.711 *et seq.*). Instead, section 14061, which provided the statutory right of action in death cases, was literally reenacted, with the modifications about to be noted, in section 1 of Act No. 297, Pub. Acts 1939, which reads:

"Be it enacted by the senate and house of repre-
sentatives of the State of Michigan, whenever the
death of a person *or injuries resulting in death,* shall
be caused by wrongful act, neglect or default, and the
act, neglect or default is such as would (if death had
not ensued) have entitled the party injured to
maintain an action and recover damages, in respect
thereof, then and in every such case, the person who,
or the corporation which would have been liable, if
death had not ensued, shall be liable to an action for
damages, notwithstanding the death of the person
injured, and although the death shall have been
caused under such circumstances as amount in law
to felony. *All actions for such death, or injuries
resulting in death, shall hereafter be brought only
under this act.*"

The italicized words in the above section disclose
the only changes made by the 1939 re-enactment.
Surely the right to bring an action in a death case
was not repealed by this re-enactment in identical
words of the former statute. Instead the obvious
purpose of the 1939 act was to enable a person to
bring his action under this statute regardless of
whether there was instantaneous death or survival
of the injured person, and to provide to what person
or persons the damages recovered should be "dis-
tributed."

*Martinelli* v. *Burke,* 298 Mass. 390 (10 N. E. [2d]
113, 112 A. L. R. 341), cited and quoted in my
Brother's opinion, is not in accord with the law of
this State. The Massachusetts statutory provision
on which decision turned was: "A person who by his
negligence or by his wilful, wanton, or reckless act
\* \* \* causes the death of a person \* \* \*
shall be liable." In substance the Massa-
chusetts court held that because the statute gave the
right of action only against the "person," as dis-
tinguished from his estate, death of the tortfeasor

terminated the right of action. The Michigan statute both before and since its re-enactment in 1939, like the Massachusetts statute, provides a right of action against "the person who, or corporation which" commits the tort for which suit is brought. But in *Ford* v. *Maney's Estate, supra,* we passed squarely upon and rejected the contention "that the right of action abated" upon the death of the tortfeasor. We there said:

"A cause of action for negligent injuries, which accrues in the lifetime of a party, whether person injured or tortfeasor, survives his death. *Rogers* v. *Windoes,* 48 Mich. 628; *Norris* v. *Kent Circuit Judge,* 100 Mich. 256; *Love* v. *Railroad Co.,* 170 Mich. 1.

" 'When the law declares that a cause of action shall survive, it is equivalent to saying an executor may sue upon it.' *Rogers* v. *Windoes, supra.*

"It is also equivalent to saying that the estate of the deceased tortfeasor may be sued upon it.   *   *   *

"The cause of action consisted of the duty of care owed by Mr. Maney to plaintiff, its breach, and the consequent injury to plaintiff.   45 C. J. p. 661; *Robertson* v. *United Fuel & Supply Co.,* 218 Mich. 271. All elements were complete during the lifetime of Mr. Maney and, therefore, a cause of action vested in plaintiff, and, under our statute, survived."

See, also, *In re Beierdorfer's Estate,* 297 Mich. 592; and *In re Chamberlain's Estate,* 298 Mich. 278.

Our conclusion being that the administrator's cause of action survives, consideration must be given to appellant's claim that damages adjudged in the amount of $5,000 were excessive. In this connection the question arises as to what elements of damages may be recovered under the 1939 act. This act specifically divides the damages recoverable into three classes. These classes are damages (1) "with

reference to the pecuniary injury resulting * * * ;''
(2) ''for the reasonable medical, hospital, funeral
and burial expenses . * * * ;'' (3) ''for the pain
and suffering.''

1. The surviving husband had no legally enforce-
able claim to support or maintenance by deceased,
nor does this record disclose such claim as to any
other person. But the surviving husband lost the
services of Mrs. Bennett, and the value thereof less
reasonable cost of her maintenance may be recovered
in this action. *Gorton* v. *Harmon,* 152 Mich. 473 (15
Ann. Cas. 461). It should be noted that recovery
in the cited case was under the provision of the
death act that there could be recovery ''for pecuni-
ary loss,'' and that the same provision is embodied
in the 1939 act. This element of damages is re-
coverable in the instant case.

2. The surviving husband was legally liable for
the payment of his wife's ''reasonable medical,
hospital, funeral and burial expenses;'' but since
he has recovered for these items in the suit brought
in his own right, there can be no recovery for them
in this action.

3. There seems to be no room for doubt that
under (3) above quoted there can be recovery in this
action ''for the pain and suffering, while conscious,
undergone by such deceased person during the
period intervening between the time of the inflicting
of such injuries and his (her) death.'' This action
is statutory and the elements of damage are fixed
therein; and under the circumstances of the instant
case the only recoverable damages are for loss of
the wife's services and for pain and suffering. On
this appeal the question is presented as to whether
the judgment for $5,000 damages for these elements
was excessive.

As to loss of services the following are among the pertinent facts. At the time of the accident Mr. and Mrs. Bennett were respectively 71 and 70 years old, and the expectancy of each was substantially eight years. Each was in good health. They occupied as their home and together operated a hotel at Hubbard Lake in Alcona county. It was a summer resort hotel, having 14 bedrooms, and located 12 miles from a railroad station. There were four or five tourist cottages in connection with the hotel. Mr. Bennett did the clerical work and the buying. Mrs. Bennett had supervision of employees and took general charge of carrying on the business. She was a good cook. Without indicating whether he meant during the whole year or only during the season of activity, Mr. Bennett testified Mrs. Bennett's services were worth $100 per month.

As to pain and suffering, the record discloses that Mrs. Bennett lived six days after the accident. The physician who attended her at the hospital testified:

"I found her in shock; she had extensive laceration of the head and face, her left ear was severed almost from the head; injuries to chest and fracture of the left leg and injury to her spine. She had an abdominal injury. She died from these injuries. * * * She had a compound fracture of the left leg. * * * She had two blood transfusions. She was conscious following the injuries all the time while she was in the hospital. Her injuries were certainly painful and she complained of pain. They required a narcotic. * * * Concerning her internal injuries, there was no operation performed, but she was troubled with great distention of gas and abdominal distress. * * * The left side of her face and her whole forehead were badly lacerated and the ear almost severed. At first she was dazed, which lasted until the next day."

By our review of the record we are constrained to hold that damages adjudged in the amount of $5,000 were excessive. Without reviewing all the pertinent phases of the record we note the following. The period during which plaintiff might hope to benefit by the services of his wife was limited by both his and by her expectancy of approximately eight years. It must be considered that Mrs. Bennett was 70 years of age at the time of the accident and it is fair to presume that her ability to render services of the character noted quite probably would not continue at her advanced age for the full remainder of her life. Also that the trial judge in reaching his determination made no allowance or deduction for the cost of the wife's maintenance during such period as the services might be rendered. See *Gorton* v. *Harmon, supra.* As to the amount to be awarded for pain and suffering we cannot overlook the fact that Mrs. Bennett survived the accident only six days and that during the first of this period she was in a "dazed" condition. Under this record the maximum amount of damages should not have exceeded $3,000.

Mr. Justice REID has written for reversal in each of these two cases, placing decision on the ground that plaintiff was guilty of contributory negligence as a matter of law. Our review of the record satisfies us that on this issue a question of fact was presented. The circuit judge, hearing the case without a jury, decided the issue in favor of plaintiff. The record sustains that finding. Neither case should be reversed on that issue.

Judgment entered in the case of Edwin E. Bennett in his individual right should be affirmed. In the case wherein Edwin E. Bennett as administrator of the estate of Margaret B. Bennett, deceased, is plaintiff, the judgment will be reversed and a new

trial ordered unless within 15 days after our deci-
sion herein a remittitur of damages in the amount
of $2,000 is filed by the plaintiff, in which event
judgment for the remaining amount of $3,000 will
be affirmed.

No costs should be awarded on this appeal to
either party for the reason that neither has fully
sustained the position asserted in this Court.

STARR, WIEST, BUTZEL, BUSHNELL, and BOYLES,
JJ., concurred with NORTH, C. J.

REID, J. (*dissenting*). It is apparent that plain-
tiff Bennett, driving in a southerly direction, was
not watching the road ahead of him. He testified
he knew nothing of the accident that had occurred.
He even inquired, after the accident, of witness
Squires what had happened. He observed the
Hanna house at his right just before the accident,
said the women were talking about it, and that he
took a look at it. His negligence is established by
his own testimony.

Both of the occupants of the Olney car were killed
by the accident. Mrs. Bennett was also killed, leav-
ing at the time of trial Bennett and his nephew's
wife the only survivors of the occupants of the
two cars.

The only disinterested witness to the accident was
Leo L. Squires who was working on the last rows of
shingles on the very front end of the north side of
the front gable of the Hanna house. His attention
was called to the accident by the brakes squeaking
or some other thing of which he was not sure and
he noticed the two cars when they collided. They
came together about 60 or 75 feet south of the drive-
way leading toward this house. It appeared from
where he was looking as if both cars were in the

center of the pavement. The witness was high up, there was nothing to interfere with his view, and it looked as if the front end of both cars sort of jumped into the air, the car on the *easterly* side of the pavement turning completely around so that it faced southeast.

The testimony of this entirely disinterested and apparently credible witness is not contradicted by any witness except the impeached witness, Eunice Hawkins Cornelius, who had worked as waitress for plaintiff six years in his hotel, is married to his nephew and was riding with plaintiff in his car. She stated to State trooper Froberg within 15 minutes after the accident that she had her head down at the time of the collision, was reaching for a basket of grapes on the floor of the car and didn't recall how the accident happened. At the trial she undertook to relate in her testimony that Bennett's car was entirely on the westerly half of the pavement at all times and described the Olney car as leaning toward the Bennett car and that the collision took place on the west half of the road.

Mr. Olney, driving northerly on his right hand side of the road, must have noticed a jeopardizing change in the direction of the Bennett car as it began to cross over onto the easterly side of the road. Nothing else would have caused him to apply his brakes so that there were skid marks for 33 feet before the point of collision, *beginning* when his car was entirely on *his side* of the road and ending with his left wheel 2 ½ feet west of the median line.

It, therefore, becomes a reasonable conclusion from the undisputed nature of Olney's skid marks that the Bennett car did begin to go over onto the east and wrong side of the highway. Evidently the Bennett car must have swerved again to the right so that the two cars came in contact practically in the middle of the highway. The confusion of Olney

was caused by the preceding negligence of Bennett. In any event, the collision having been shown to have occurred in the center of the road, plaintiff is clearly guilty of negligence and cannot recover. *Loucks* v. *Fox,* 261 Mich. 338.

The evidence as to plaintiff's negligence clearly preponderates in favor of the defendant. The verdicts for plaintiffs are contrary to the great weight of the evidence, and judgments and verdicts should be set aside. A judgment should be entered for defendant in both cases.