MARKMAN, J.
Plaintiff, Peter Deacon, filed suit against defendant, Pandora Media, Inc., in the United States District Court for the Northern District of California, claiming in relevant part that defendant had violated the preservation of personal privacy act (PPPA), MCL 445.1711 et seq.,[1] by publically disclosing personal information concerning his music preferences. The federal district court ruled in favor of defendant, and under MCR 7.305(B),[2] the United States Court of Appeals for the Ninth Circuit certified the following question to this Court:
*480 Has Deacon stated a claim against Pandora for violation of the VRPA by adequately alleging that Pandora is [in] the business of “renting” or “lending” sound recordings, and that he is a “customer” of Pandora because he “rents” or “borrows” sound recordings from Pandora?
Furthermore, in certifying the question, the Ninth Circuit noted that
“the particular phrasing used in the certified question[s] is not to restrict the [Michigan] Supreme Court’s consideration of the problems involved and the issues as the [Michigan] Supreme Court perceives them to be in its analysis of the record certified in this case. This latitude extends to the [Michigan] Supreme Court’s restatement of the issue or issues and the manner in which the answers are to be given, whether as a comprehensive whole or in subordinate or even contingent parts.” [Deacon v Pandora Media, Inc., unpublished amended order of the United States Court of Appeals for the Ninth Circuit, entered February 24, 2015 (Case No. 12-17734), p 12, quoting Martinez v Rodriquez, 394 F2d 156, 159 n 6 (1968) (alterations in original).]
Having now heard oral argument and considered the issues involved, we grant the Ninth Circuit’s request to answer its question. However, we limit the question to whether plaintiff can be characterized under the PPPA as a “customer” of defendant because at the relevant time he was a person who “rent[ed]” or “borrow [ed]” sound recordings from defendant. We conclude that plaintiff was not such a “customer.”
I. FACTS AND HISTORY
Defendant is a Delaware corporation with its principal place of business in California. It operates a music-streaming program through the Internet called *481 “Pandora”[3] that allows each listener to create a unique, customized “radio station” based on, for instance, a preferred artist or musical genre. Thereafter, the music streamed by Pandora becomes increasingly refined to more closely match the listener’s music preferences as the listener indicates to Pandora whether he or she likes or dislikes particular songs being played.[4] The listener may skip or bypass a song, but may not save, fast forward, or rewind a song. In addition, the listener cannot select the particular song to be played, but must restrict himself or herself to the song selected by Pandora. Pandora is free, although listeners may elect to pay a fee to use a version of Pandora that does not have commercials.
In September 2011, plaintiff, a Michigan resident, sued defendant in the federal district court. He alleged that defendant (a) made its listeners’ profile pages, each of which included information about the listener’s music preferences, “publicly available and searchable on the World Wide Web for anyone to view” and (b) “unilaterally integrated its [listeners’] profile pages with their Facebook accounts.”[5] According to plaintiff, that integration resulted in the public release of “sensitive listening records to all of [a listener’s] Facebook Triends.’ ” As a consequence of these two disclosures, *482 plaintiff claimed, defendant had violated both the PPPA and the Michigan Consumer Protection Act (MCPA), MCL 445.901 et seq. Plaintiff sought monetary and equitable relief for himself and on behalf of a putative class of all Michigan residents who were registered listeners of Pandora before August 5, 2010, and who allegedly had suffered similar public disclosures of personal information. The federal district court granted defendant’s motion to dismiss both claims. Deacon v Pandora Media, Inc, 901 F Supp 2d 1166 (ND Cal. 2012). Plaintiff appealed the dismissal of his PPPA claim in the Ninth Circuit, and that court certified the present question to this Court.[6] We ordered oral argument on whether to grant the request to answer this question, In re Certified Question from the United States Court of Appeals for the Ninth Circuit, 498 Mich 882 (2015), and argument was heard on April 27, 2016.
II. STANDARD OF REVIEW
“This Court reviews de novo issues of statutory interpretation.” In re COH, 495 Mich 184, 191; 848 NW2d 107 (2014).
III. ANALYSIS
“Our goal in interpreting a statute ‘is to give effect to the Legislature’s intent, focusing first on the statute’s plain language.’ ” Malpass v Dep’t of Treasury, 494 Mich 237, 247-248; 833 NW2d 272 (2013), quoting Klooster v City of Charlevoix, 488 Mich 289, 296; 795 NW2d 578 (2011). “[W]ords used by the Legislature must be construed and understood in accordance with their common, ordinary meaning.” Smitter v Thornapple Twp, 494 Mich 121, 129; 833 NW2d 875 (2013). “When the *483 language of a statute is clear, it is presumed that the Legislature intended the meaning expressed therein.” Epps v 4 Quarters Restoration LLC, 498 Mich 518, 529; 872 NW2d 412 (2015).
The title of the PPPA states that it is
[a]n act to preserve personal privacy with respect to the purchase, rental, or borrowing of certain materials; and to provide penalties and remedies for violation of this act.[7]
At all times relevant to this case, MCL 445.1712 of the PPPA prohibited the disclosure of certain materials:
Except as provided in [MCL 445.1713] or as otherwise provided by law, a person, or an employee or agent of the person, engaged in the business of selling at retail, renting, or lending books or other written materials, sound recordings, or video recordings shall not disclose to any person, other than the customer, a record or information concerning the purchase, lease, rental, or borrowing of those materials by a customer that indicates the identity of the customer.[8]
Furthermore, MCL 445.1711(a) of the PPPA defined “customer” as follows:
“Customer” means a person who purchases, rents, or borrows a book or other written material, or a sound recording, or a video recording.[9]
*484 Finally, MCL 445.1715 of the PPPA provided a civil remedy for its violation:
Regardless of any criminal prosecution for a violation of this act, a person who violates this act shall be liable in a civil action for damages to the customer identified in a record or other information that is disclosed in violation of this act. The customer may bring a civil action against the person and may recover both of the following:
(a) Actual damages, including damages for emotional distress, or $5,000.00, whichever is greater.
(b) Costs and reasonable attorney fees.
Under MCL 445.1715, only a “customer” may bring a civil action for a violation of the PPPA. For the reasons that follow, we conclude that plaintiff was not a “customer” as defined by MCL 445.1711(a) because he neither “rent[ed]” nor “borrow [ed]” a sound recording.[10] Accordingly, we need not address whether plaintiff established the remaining elements of a PPPA claim, such as, for example, whether the PPPA applied to defendant because it was “engaged in the business of. . . renting, or lending . . . sound recordings” under MCL 445.1712.
The PPPA does not define either “rent” or “borrow.” “When considering the meaning of a nonlegal word or phrase that is not defined in a statute, resort to a lay dictionary is appropriate.” Wesche v Mecosta Co Rd Comm, 480 Mich 75, 84; 746 NW2d 847 (2008). In this regard, it is best to consult a dictionary from the era in which the legislation was enacted. See Cain v Waste Mgt, Inc (After Remand), 472 Mich 236, 247; 697 NW2d 130 (2005) (“Because the statute itself does not define loss,’... we must ascertain the original meaning the *485 word ‘loss’ had when the statute was enacted in 1912.”). Because the PPPA was enacted in 1988, we consult dictionaries from that era to define those words. Furthermore, because those words are used as verbs in the statute, we identify the definitions of those words as verbs.
Concerning “rent,” The Random House Dictionary of the English Language: Second Unabridged Edition (1987) defines the transitive form of the verb “rent” as “to take and hold (property, machinery, etc.) in return for the payment of rent. . . .” Because the dictionary definition of the verb “rent” incorporates the noun “rent,” we also determine the definition of the noun form of that word. The noun “rent” is defined as “a payment or series of payments made by a lessee to an owner in return for the use of machinery, equipment, etc.”[11] Id. Thus, for a listener to constitute a person who “rents” a sound recording, he or she must, at a minimum, provide a payment in exchange for that recording. Stated otherwise, the word “rent” contemplates some form of payment. Here, however, there is nothing to suggest that plaintiff was one of those listeners who paid the optional fee to receive sound recordings using the commercial-free version of Pandora. Further, there is nothing to suggest that plaintiff otherwise provided any payment to defendant in exchange for a sound recording. Thus, because plaintiff did not provide a payment for a sound recording,[12] we conclude that he *486 was not “a person who . . . rents ... a sound recording .. . ”[13] MCL 445.1711(a).
Concerning “borrows,” The Random House Dictionary of the English Language. Second Unabridged Edition (1987) defines the verb “borrow” as “to take or obtain with the promise to return the same or an equivalent!.]” Thus, the word “borrow” contemplates some promise to return the borrowed subject matter or its equivalent. As applied here, plaintiff was not a person who “borrowed]” a sound recording because there was no promise, implied or expressed, that he would ever “return” the sound recording or its equivalent to defendant. Put simply, the music-streaming program offered by defendant only involved the delivery of a sound recording to the listener; there was no corresponding “return” of a recording or its equivalent from the listener to defendant. American Broadcasting Cos, Inc v Aereo, Inc, 573 US _, _; 134 S Ct 2498, 2503; 189 L Ed 2d 476 (2014) (“See A Dictionary of Computing 494 (6th ed. 2008) (defining ‘streaming[13] as ‘[t]he process of providing a steady flow of audio or video *487 data so that an Internet user is able to access it as it is transmitted’).”) (alteration in original); Microsoft Computer Dictionary, Fourth Edition (Washington: Microsoft Press, 1999), p 425 (defining “streaming” as “the process of delivering information, especially multimedia sound or video, in a steady flow that the recipient can access as the file is being transmitted”).[14] Nothing in the present dispute suggests that plaintiff or defendant promised anything more. We accordingly conclude that plaintiff was not “a person who . .. borrows ... a sound recording . .. ,”[15] MCL 445.1711(a).
IV. CONCLUSION
At all relevant times, MCL 445.1711(a) provided that “ ‘[c]ustomer’ means a person who . . . rents, or *488 borrows ... a sound recording. . . .” We hold that plaintiff was not a person who “rent[ed]” a sound recording because he did not give payment for it. We further hold that plaintiff was not a person who “borrow[ed]” a sound recording because there was no promise, implied or expressed, that he would “return” the sound recording or its equivalent to defendant. We therefore conclude that plaintiff was not a “customer” of defendant under the PPPA because he was not a person who “rent[ed]” or “borrow[ed]” a sound recording from defendant.[16]
Young, C.J., and Zahra, McCormack, Viviano, Bernstein, and Larsen, JJ., concurred with Markman, J.

 While other courts have referred to this statute as the “video rental privacy act” (VRPA), its provisions also cover books, written materials, and sound recordings. Accordingly, we will refer to it throughout this opinion as the “preservation of personal privacy act” (PPPA).

 When the question was certified, MCR 7.305(B)(1) provided that “[w]hen a federal court, state appellate court, or tribal court considers a question that Michigan law may resolve and that is not controlled by Michigan Supreme Court precedent, the court may on its own initiative or that of an interested party certify the question to the Michigan Supreme Court.” Effective September 1, 2015, the court rule was *480 renumbered as MCR 7.308(A)(2) with a few slight changes in wording.

 “A stream is an electronic transmission that renders the musical work audible as it is received by the client-computer’s temporary memory. .. . [TJhere is a playing of the song that is perceived simultaneously with the transmission.” United States v American Society of Composers, Authors & Publishers, 627 F3d 64, 74 (CA 2, 2010).

 As described by defendant in the Form S-l Registration Statement it filed with the Securities and Exchange Commission, Pandora “uses intrinsic qualities of music to initially create stations and then adapts playlists in real-time based on the individual feedback of each listener.”

 During the proceedings in the Ninth Circuit, the parties disputed whether the allegedly disclosed information concerning plaintiffs music preferences connected those preferences with his full name. We do not address that dispute.

 Plaintiff did not appeal the dismissal of his MCPA claim, and that claim is not at issue here.

 1988 PA 378, title. On May 2,2016, while this case was pending before this Court, the Governor signed into law 2016 PA 92, effective July 31, 2016. That public act amends the PPPAin several respects, but not in any respect that affects our analysis here. Our opinion refers only to the version of the PPPA in effect at the time of the events giving rise to this case.

 MCL 445.1713(a) to (e) set forth five exceptions to the general prohibition against disclosure under MCL 445.1712. None of these exceptions is relevant here. 2016 PA 92 adds a sixth exception to MCL 445.1713, effective July 31, 2016.

 Effective July 31, 2016, MCL 445.1711(a) will provide that “ ‘[c]us-tomer’ means an individual who purchases, rents, or borrows a book, other written material, a sound recording, or a video recording.” See 2016 PA 92.

 Plaintiff does not argue that he “purchase[d]” a sound recording for the purposes of MCL 445.1711(a).

 By referring to this definition of the noun “rent,” we express no opinion on whether plaintiff may be characterized as the “lessee” or defendant may be characterized as the “owner” of sound recordings.

 Plaintiff summarily asserts in a footnote that he was a person who “rentfed]” a sound recording because he “gave Pandora ‘rent’ in the form of advertising impressions and valuable personal and demographic information.” We conclude that this argument has been abandoned because plaintiff has provided no support for it. See Mitcham v Detroit, 355 Mich 182, 203; 94 NW2d 388 (1959) (“It is not enough for an *486 appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position.”). Thus, we will not further address the argument.

 Although we conclude that plaintiff was not a person who “rent[ed]” a sound recording because he did not provide a payment for it, we do not intend to suggest that the opposite conclusion would necessarily result if plaintiff had provided a payment. That is, we do not address the parties’ arguments concerning whether and to what extent, if any, it is only possible to “rent” a sound recording through “use” or “control.” Compare the statement in defendant’s supplemental brief on appeal that “the District Court correctly found the Complaint to be deficient because it is devoid of factual allegations sufficient to support a plausible claim that Plaintiff exercised, over the temporary Internet file, the type of use and control inherent in a ‘borrowing’ or ‘renting’ relationship” with the statement in plaintiffs supplemental brief on appeal that “the word ‘use’ never appears in the [PPPA] so the entire line of argument focused on ‘use’ is utterly misplaced.”

 Although we recognize that the federal district court dismissed the PPPA claim under FR Civ P 12(b)(6) on the basis of its conclusion that plaintiff had “not alleged facts showing that Pandora rented, lent and/or sold music to him,” Deacon, 901F Supp 2d at 1176, and that he appealed the denial in the Ninth Circuit, we do not respond to the certified question to apply federal law concerning FR Civ P 12(b)(6) to his complaint. Rather, we only resolve an issue of Michigan law. In this regard, as stated previously, the Ninth Circuit, quoting Martinez, 394 F2d at 159 n 6, has asserted that “ ‘the particular phrasing used in the certified question^] is not to restrict the [Michigan] Supreme Court’s consideration of the problems involved and the issues as the [Michigan] Supreme Court perceives them to be . . . .” (Alterations in original.) In our judgment, the issue of Michigan law is best resolved without restricting it by the allegations in plaintiffs complaint. Thus, we will not answer the question presented here on the basis of an allegation unsupported by the record—that the sound recording is physically removed from the listener’s computer and returned to defendant, which allegation appears to be contrary to the basic definition of “streaming” found in computer dictionaries—simply because the question encompasses the phrase “stated a claim.”

 As with our conclusion concerning the word “rents,” our conclusion concerning the word “borrows” leaves unresolved the issue of whether and to what extent, if any, it is only possible to “borrow” a sound recording through “use” or “control.” See note 13 of this opinion.

 We recognize that in our digitized world it is possible to transmit audio or visual materials on a temporary basis absent any “return” of those materials. Our conclusion that plaintiff was not one who “borrow[ed]” a sound recording is directed by the language of the PPPA. To the extent that there are some who believe that the law should direct a different result, those arguments should be addressed to the Legislature. People v Dunbar, 499 Mich 60, 72; 879 NW2d 229 (2016) (“[W]hen the people wish to argue that a statute is unwise or results in bad policy, those arguments should be addressed to the Legislature.”) (quotation marks and citation omitted).