# Syllabus

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

DAHER v PRIME HEALTCHARE SERVICES-GARDEN CITY, LLC

Docket No. 165377. Argued April 16, 2024 (Calendar No. 2). Decided July 30, 2024.

Nawal Daher and Mohamad Jomaa, as co-personal representatives of the estate of Jawad Jumaa, their son, filed a complaint against Prime Healthcare Services-Garden City, LLC, doing business as Garden City Hospital; Kelly W. Welsh, D.O.; and Meagan Shady, D.O., for negligence, medical malpractice, and nursing malpractice for failing to treat Jawad for bacterial meningitis. The complaint sought damages under the wrongful death act (WDA), MCL 600.2922, for, among other things, Jawad's lost future earnings. Thirteen-year-old Jawad was diagnosed with torticollis in the emergency room of Garden City Hospital. He was treated for this condition and discharged. Jawad was found dead the next morning, and an autopsy revealed that the cause of death was bacterial meningitis. After plaintiffs filed their complaint, defendants moved for summary disposition, arguing that lost future earnings were not permitted under the WDA, and alternatively, that plaintiffs had failed to prove any lost future earnings beyond mere speculation. The trial court, Martha M. Snow, J., denied defendants' motion. Defendants appealed in the Court of Appeals, which affirmed. 344 Mich App 522 (2022). The Court of Appeals held that its holding in *Denney v Kent Co Rd Comm*, 317 Mich App 727 (2016), was controlling and that damages for lost future earnings were therefore recoverable under the WDA. Further, the Court of Appeals held that *Wesche v Mecosta Co Rd Comm*, 480 Mich 75 (2008), had implicitly overruled *Baker v Slack*, 319 Mich 703 (1948), and that the Legislature's 1971 amendment of the WDA had superseded *Baker* and made the list of damages that are recoverable under the act nonexhaustive. Defendants sought leave to appeal in the Michigan Supreme Court, and the Court granted the application. 512 Mich 959 (2023).

In a unanimous opinion by Justice VIVIANO, the Supreme Court *held*:

The Court of Appeals erred by failing to apply *Baker* because *Baker* was never clearly superseded by the Legislature or overruled by the Supreme Court. *Baker*'s holding that damages for lost earning capacity are not available under the WDA is reaffirmed, and *Denney* and *Thorn v Mercy Mem Hosp Corp*, 281 Mich App 644 (2008), are overruled to the extent that they are inconsistent with this opinion.

1. Under MCL 600.2921, actions on claims for injuries that result in death shall not be prosecuted after the death of the injured person, except as provided in the WDA. MCL

600.2922(6) provides that a court or jury may award damages under the act as they consider "fair and equitable, under all the circumstances," including for reasonable medical and funeral expenses; reasonable compensation for the pain and suffering of the deceased, while conscious, endured between the time of injury and death; and for the loss of financial support and the loss of the society and companionship of the deceased.

2. The WDA's predecessors were the death act and the survival act. Under the survival act, a decedent's cause of action survived their death and the defendant's death and entitled the decedent's estate to whatever damages the decedent could have recovered, including damages for the loss of future earnings. Under the death act, the cause of action was for the decedent's survivors whom the decedent was obligated to support, and recovery was limited to the actual loss sustained by the survivors as a result of the decedent's death. In 1939, the Legislature created a new wrongful death act that combined the death act and the survival act and required that all actions for injuries resulting in death be brought under the new act. The new act was in the form of an amendment of the death act and provided for the repeal of any inconsistent provision of the survival act. Thus, the survival act was not repealed but was incorporated into the new act to form a single ground of recovery in cases in which tortious conduct caused death. In *Baker*, the Court rejected the argument that the new act provided for recovery of the loss of future earnings without a showing that those seeking recovery had sustained a pecuniary loss. The Court held that following the 1939 amendments, the WDA's damages provision provided an exclusive list of the types of damages that could be recovered for injuries resulting in death and divided recoverable damages into three classes: (1) pecuniary injury; (2) reasonable medical and funeral expenses; and (3) the pain and suffering of the decedent before their death. The Court further held that lost future earnings were not recoverable because under the act, the right to recover for pecuniary loss must be predicated upon the existence of a survivor's legally enforceable claim to support or maintenance by the deceased.

3. The Legislature amended the WDA in 1971, adding the word "including" and other changes, and again in 1985. In *Denney*, relying on *Thorn*, the Court of Appeals held that the addition of the word "including" in the 1971 amendments indicated the Legislature's intent to permit the award of "any type of damages . . . deemed justified by the facts of the particular case." Therefore, *Denney* held that damages for loss of future earnings were recoverable under the WDA. However, neither *Denney* nor *Thorn* discussed *Baker*. When the Legislature combined the survival act and the death act in the 1939 amendments, it made a clear policy choice to allow only death act damages. Thus, it revived the common-law rule barring recovery of damages for survival actions to the extent that they were not included in the 1939 amendments, such as loss of future earnings. Therefore, in order for the 1971 amendments to abrogate the common-law rule and thereby allow damages for future earnings, the amendments must clearly so indicate in no uncertain terms. Although the phrase "pecuniary injury" was deleted from the statute in the 1971 amendments, this did not undermine the holding in *Baker* that rejected the plaintiff's claim for future-earnings damages because they were not a type of damages expressly provided for in the WDA. The removal of that phrase did not change the relationship between survival actions and the WDA, which share a single ground of recovery in cases in which tortious conduct caused death. Instead, this Court has held that the deletion of "pecuniary injury" and the addition of "loss of . . . society and companionship" were a clear rejection by the Legislature of *Breckon v Franklin Fuel Co*, 383 Mich 251 (1970), which held that damages for loss of companionship were not

recoverable under the WDA because they did not qualify as a pecuniary injury. Similarly, the Court previously rejected the argument that the addition of the phrase "under all of the circumstances" in the 1971 amendments superseded a prior decision holding that certain evidence was inadmissible. That phrase invoked the jury's role in determining the amount of damages but did not address the type of damages recoverable.

4. In this case, the Court of Appeals held that the addition of "including" in the 1971 amendments means that the types of damages listed in the statute are nonexhaustive, citing its opinions in *Denney* and *Thorn*. However, neither opinion discussed *Baker*. While "including" is sometimes used in a statute as a term of enlargement, it can also be used as a term of limitation. Given the statutory history of the survival act and the WDA, as well as the related caselaw, it is not persuasive that, by inserting the word "including" into the WDA, the Legislature intended to convert what had long been an exhaustive list of the types of recoverable damages into an open-ended list of damages left to the jury's discretion. This would amount to a further abrogation of the common law, and to effect such a change, the Legislature must speak in no uncertain terms. Notably, the Legislature expressly added damages for loss of society and companionship in the 1971 amendments and for "loss of financial support" in the 1985 amendment. The Legislature's insertion of "including" was not a similarly clear indication of its intent. Moreover, the fact that the Legislature adopted "loss of financial support" to the exclusion of loss of future earnings, when both types of damages had been the subject of dispute under the survival act and the WDA, indicates that the Legislature intended to exclude the latter.

5. Lastly, *Wesche* did not implicitly overrule *Baker* or otherwise undermine *Baker*'s holding. The Court of Appeals reasoned that when *Baker* was decided, the WDA was construed as providing a new cause of action for the benefit of the beneficiaries. In *Wesche*, however, this Court held that this was a "repudiated understanding" of the WDA and that it was now clear that the underlying claim survives by law and that the limitations in the underlying cause of action apply to the wrongful death action. The Court of Appeals did not explain why that understanding of the WDA affected the validity of *Baker*'s holding. Regardless of whether the WDA provides a new action or only one that survives by law, as stated in *Wesche*, the WDA serves as a "filter" through which the underlying action must proceed and controls which types of damages are available.

Court of Appeals' judgment reversed, Part II(B) of Court of Appeals opinion vacated, and case remanded to the circuit court.

# OPINION

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

FILED July 30, 2024

STATE OF MICHIGAN

SUPREME COURT

NAWAL DAHER and MOHAMAD
JOMAA, Co-Personal Representatives of the
ESTATE OF JAWAD JUMAA, also known
as the ESTATE OF JAWAD JOMAA,

   Plaintiffs-Appellees,

v              No. 165377

PRIME HEALTHCARE SERVICES-
GARDEN CITY, LLC, doing business as
GARDEN CITY HOSPITAL, KELLY W.
WELSH, D.O., and MEAGAN SHADY,
D.O.,

   Defendants-Appellants.

BEFORE THE ENTIRE BENCH

VIVIANO, J.

The issue in this case is whether the wrongful death act (WDA), MCL 600.2922, allows recovery of damages for lost future earnings absent a showing that a beneficiary is

entitled to those earnings as financial support.  This Court held in *Baker v Slack*, 319 Mich 703; 30 NW2d 403 (1948), that an earlier version of the statute did not provide such damages.  In *Denney v Kent Co Rd Comm*, 317 Mich App 727, 732; 896 NW2d 808 (2016), the Court of Appeals held that "damages for lost earnings are allowed under the [WDA]" but did not address our holding in *Baker*.  In the present case, the Court of Appeals concluded that *Denney* is controlling and that our holding in *Baker* "has clearly been overruled or superseded, and . . . [is] no longer 'good law' . . . ."  *Daher v Prime Healthcare Servs-Garden City, LLC*, 344 Mich App 522, 530; 1 NW3d 405 (2022).  We disagree that *Baker* has been overruled or superseded, and we hold that, like the earlier version of the WDA, the current version does not allow for recovery of lost future earnings. Therefore, we reverse the Court of Appeals' holding on this issue and vacate the remainder of its opinion.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs[1] brought this medical malpractice action under the WDA, alleging that defendants committed medical malpractice by failing to diagnose and treat bacterial meningitis in their 13-year-old son, Jawad Jumaa, leading to his death.  The night before he died, Jawad's mother, Nawal Daher, took him to the emergency room at defendant Garden City Hospital, where he was diagnosed with and received care for torticollis[2] before

---

[1] Plaintiffs are Jawad Jumaa's parents, who are also the co-personal representatives of Jawad's estate.

[2] Torticollis is "a twisting of the neck that causes the head to rotate and tilt at an odd angle."  Johns Hopkins Medicine, *Torticollis (Wryneck)*, <https://www.hopkinsmedicine.org/health/conditions-and-diseases/torticollis-wryneck> (accessed July 8, 2024) [https://perma.cc/A8UL-EB8P].

2

being discharged. The next morning, Jawad was found dead at home. An autopsy revealed the cause of death to be acute purulent (i.e., bacterial) meningitis.

Plaintiffs' complaint seeks damages for, among other things, decedent's lost future earnings.[3] Plaintiffs' expert estimated that those damages are between $11,000,000 and $19,000,000, depending on the level of education that Jawad would have received. Defendants moved for summary disposition, arguing that damages for lost future earnings are not permitted under the WDA and that, even if such damages were recoverable, plaintiffs failed to prove any lost future earnings beyond mere speculation. The trial court denied the motion.

Defendants sought leave to appeal in the Court of Appeals, which affirmed in a published opinion. Following *Denney*, the majority held that damages for lost earnings are allowed under the WDA. *Daher*, 344 Mich App at 531. While the majority recognized that this Court held in *Baker* that lost future earnings were not recoverable under an earlier version of the WDA, the majority held that "*Baker* has clearly been overruled or superseded, and . . . was no longer 'good law' long before [the Court of Appeals] decided *Denney*." *Id.* at 530. The Court gave two reasons for its conclusion: (1) its belief that *Wesche v Mecosta Co Rd Comm*, 480 Mich 75; 746 NW2d 847 (2008), "implicitly . . . overruled the fundamental principle underlying the analysis and holding in *Baker*," and (2) the Legislature's subsequent insertion of the word "including" into MCL

---

[3] Plaintiffs' complaint seeks damages for loss of earning capacity. In *Hannay v Dep't of Transp*, 497 Mich 45, 80-81; 860 NW2d 67 (2014), we explained that "damages for work loss consist of wages that a person 'would' have earned but for the accident, whereas loss-of-earning-capacity damages are wages a person 'could' have earned but for the accident." (Citation omitted.)

600.2922(6) means that "the enumerated list of the kinds of damages available . . . is not exhaustive[.]" *Daher*, 344 Mich App at 527, 530.[4] Judge SWARTZLE concurred dubitante[5] and agreed with the majority that *Denney* is controlling, but he questioned whether *Denney* was correctly decided.

Defendants then sought leave to appeal in this Court. We granted the application and directed the parties to address whether: "(1) the estate of a child may recover damages for the child's lost future earnings; and (2) to what specificity future earnings need be shown."[6] *Daher v Prime Healthcare Servs-Garden City, LLC*, 512 Mich 959, 959 (2023).

## II. STANDARD OF REVIEW

Whether a particular kind of damages is recoverable for a given cause of action is a question of law, which we review de novo. See *Price v High Pointe Oil Co, Inc*, 493 Mich 238, 242; 828 NW2d 660 (2013). The interpretation and application of a statute is reviewed de novo. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008).

## III. DISCUSSION

Pursuant to MCL 600.2921, "[a]ll actions and claims survive death." However, "[a]ctions on claims for injuries which result in death shall not be prosecuted after the death of the injured person except pursuant to [the WDA, MCL 600.2922]." *Id*. Subsection (6)

---

[4] The majority also held that plaintiffs' claim for damages was not so speculative as to preclude recovery. *Id*. at 536.

[5] A concurrence "dubitante" means that a judge has doubts about the soundness of the outcome but is unwilling, given the issues and arguments before the court, to conclude it is wrong. See *Black's Law Dictionary* (11th ed).

[6] Because we reverse the Court of Appeals on the first issue, we do not reach the second issue and instead vacate the Court of Appeals' holding on that issue.

of the WDA sets forth the damages that are permitted by the act.  It provides, in relevant part, that

> [i]n every action under this section, the court or jury may award damages as the court or jury shall consider fair and equitable, under all the circumstances including reasonable medical, hospital, funeral, and burial expenses for which the estate is liable; reasonable compensation for the pain and suffering, while conscious, undergone by the deceased during the period intervening between the time of the injury and death; and damages for the loss of financial support and the loss of the society and companionship of the deceased.  [MCL 600.2922(6).]

When interpreting a statute, our purpose is to ascertain and effectuate the legislative intent at the time it passed the act.  See *In re Certified Question from United States Court of Appeals for the Ninth Circuit*, 499 Mich 477, 482; 885 NW2d 628 (2016).  We have previously explained our approach to statutory interpretation as follows:

> We interpret statutes to discern and give effect to the Legislature's intent, and in doing so we focus on the statute's text.  Undefined terms are presumed to have their ordinary meaning, unless they have acquired a peculiar and appropriate meaning in the law, in which case we accord them that meaning. The statute must be considered as a whole, reading individual words and phrases in the context of the entire legislative scheme.  Unambiguous statutes are enforced as written.  [*Clam Lake Twp v Dep't of Licensing & Regulatory Affairs*, 500 Mich 362, 373; 902 NW2d 293 (2017) (quotation marks and citations omitted).]

"If the language of a statute is clear and unambiguous, the plain meaning of the statute reflects the legislative intent and judicial construction is not permitted."  *Tryc v Mich Veterans' Facility*, 451 Mich 129, 135; 545 NW2d 642 (1996).  Because " '[c]ontext is a primary determinant of meaning,' " "we must always read the text as a whole, 'in view of its structure and of the physical and logical relation of its many parts.' "  *TOMRA of North America, Inc v Dep't of Treasury*, 505 Mich 333, 349; 952 NW2d 384 (2020)

5

(citations omitted; alteration in original).[7] "A statute's history—the narrative of the statutes repealed or amended by the statute under consideration—properly form[s] part of [its] context . . . ." *Dep't of Talent & Economic Dev/Unemployment Ins Agency v Great Oaks Country Club, Inc*, 507 Mich 212, 227; 968 NW2d 336 (2021) (citations omitted; alterations in original); see also *Ray v Swager*, 501 Mich 52, 80 n 68; 903 NW2d 366 (2017) (distinguishing "legislative history" from "statutory history").[8] Indeed, " 'courts must pay particular attention to statutory amendments, because a change in statutory language is presumed to reflect either a legislative change in the meaning of the statute itself or a desire to clarify the correct interpretation of the original statute.' " *Ray*, 501 Mich at 80, quoting *Bush v Shabahang*, 484 Mich 156, 167; 772 NW2d 272 (2009).

For the reasons that follow, we reject the Court of Appeals' holdings in *Denney* and in this case that damages for a decedent's lost future earnings are recoverable under the WDA. Relatedly, we disagree with the Court of Appeals in this case that *Baker* was superseded by the 1971 amendments to the WDA and that *Wesche* implicitly overruled *Baker*.

---

[7] "This critical word *context* embraces not just textual purpose but also (1) a word's historical associations acquired from recurrent patterns of past usage, and (2) a word's immediate syntactic setting . . . ." *Id*. at 349 n 35 (quotation marks and citation omitted).

[8] We emphasize that this type of statutory history is also categorically different from "legislative acquiescence," in which the Legislature takes *no action* in response to a decision from this Court. Interpreting a statute through inaction " 'is a highly disfavored doctrine of statutory construction; sound principles of statutory construction require that Michigan courts determine the Legislature's intent from its *words*, not from its silence.' " *Citizens Protecting Michigan's Constitution v Secretary of State*, 503 Mich 42, 97 n 166; 921 NW2d 247 (2018) (citations omitted).

## A. THE PREDECESSOR ACTS AND THE STATUTORY AMENDMENT THAT COMBINED THEM IN 1939

To understand the damages provision of the current WDA, "[a] proper understanding of the history of the [WDA] is essential . . . ." *Hawkins v Regional Med Laboratories, PC*, 415 Mich 420, 428; 329 NW2d 729 (1982). The common law did not recognize a cause of action for the death of a human being caused by a wrongful act and did not permit the survival of actions for personal injuries. See *In re Olney's Estate*, 309 Mich 65, 72; 14 NW2d 574 (1944) (SHARPE, J., dissenting in part) (citations omitted); see also *Hawkins*, 415 Mich at 428-429. However, early in our state's history, the Legislature adopted two acts "under which an action could be brought in cases of injury resulting in death: the survival act and the wrongful death act." *Id*. at 428.

The survival act was enacted "to preserve causes of action which, under common law, were terminated by the death either of the person injured or the tortfeasor." *Id*. at 428-429.[9] Under the survival act, as amended by 1885 PA 113, a decedent's cause of action survived his or her death and the death of the defendant and entitled the decedent's estate to whatever damages the decedent could have recovered. See, for example, *Lincoln v Detroit & Mackinac R Co*, 179 Mich 189, 196, 200-202; 146 NW 405 (1914). That included damages for the loss of the decedent's future earnings. See *Walker v McGraw*, 279 Mich 97, 102-103; 271 NW 570 (1937) ("[T]he plaintiff might recover for the loss of

---

[9] Michigan's first survival act was enacted in 1838. See *Olney's Estate*, 309 Mich at 72 (SHARPE, J., dissenting in part), citing Rev Stat 1838, p 428, pt 3, tit 2, ch 3, § 7. It was amended in 1885 to include an action for "negligent injuries to the person" among those actions expressly surviving. *Olney's Estate*, 309 Mich at 72 (SHARPE, J., dissenting in part).

earnings which the evidence fairly shows that deceased would have made during the period which he would have lived, but for the injury.") (quotations marks and citation omitted).

The Legislature adopted Michigan's death act in 1848. See 1848 PA 38. The death act was "a typical 'Lord Campbell's Act' " that limited the estate's recovery "to actual pecuniary loss suffered by one entitled to or receiving support from the deceased . . . ." *Olney's Estate*, 309 Mich at 73, 76 (SHARPE, J., dissenting in part).[10] In contrast to the survival act, the cause of action created by the death act was for the survivors whom the decedent was obligated to support and was limited to the losses they sustained due to the decedent's death. *Baker*, 319 Mich at 715.[11]

The interplay between these two statutes was examined in *Ford v Maney's Estate*, 251 Mich 461; 232 NW 393 (1930), and again in *Hawkins*. " 'The line of cleavage between them is whether the death is instantaneous.' " *Hawkins*, 415 Mich at 430, quoting *Ford*, 251 Mich at 465. " '[T]he Legislature did not intend to give two remedies for death by negligent act, but . . . the death act and the survival act is each exclusive within its sphere.' " *Hawkins*, 415 Mich at 430, quoting *Ford*, 251 Mich at 464-465. "This

---

[10] As a typical Lord Campbell's Act, the relevant pecuniary interests were the replacement value of wages and household services the decedent would have provided to dependents had he lived. See *Blake v Midland R Co*, 118 Eng Rep 35; 18 QB 93 (1852).

[11] See also *Olney's Estate*, 309 Mich at 76-77 (SHARPE, J., dissenting in part) ("[W]here the action was brought under the death act, recovery was limited by the act to actual pecuniary loss suffered by one entitled to or receiving support from the deceased and funeral expenses. And where action was brought under the survival act . . . , recovery was permitted of such damages as the deceased could have recovered had he lived to bring an action, such as conscious pain and suffering, loss of earnings sustained by [the] deceased from the time of the accident until death and prospective loss from the date of death throughout the life expectancy of the deceased.") (citations omitted).

distinction was crucial since the claims were mutually exclusive and the measure of damages was substantially different." *Hawkins*, 415 Mich at 430. Indeed, as noted, an estate could recover for future earnings under the survival act but was limited to a beneficiary's loss of support under the death act.

Then, in 1939, a thunderbolt struck: the Legislature created "a new wrongful death act, 1939 PA 297, [which] combined the two acts, requiring that all actions for injuries resulting in death be brought thereunder." *Id*. at 431. The new wrongful death act "took the form of an amendment to the existing wrongful death act and provided for the repeal of any inconsistent provisions of the 'survival act'." *Id*.[12] As we made "unmistakably

---

[12] The 1939 amendment read, in pertinent part, as follows:

> An Act requiring compensation for causing death and injuries resulting in death by wrongful act[:] . . .

> Sec. 1. . . . [W]henever the death of a person or injuries resulting in death, shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages, in respect thereof, then and in every such case, the person who, or the corporation which would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony. All actions for such death, or injuries resulting in death, shall hereafter be brought only under this act.

> Sec. 2. Every such action shall be brought by, and in the names of, the personal representatives of such deceased person, and in every such action the court or jury may give such damages, as, the court or jury, shall deem fair and just, with reference to the pecuniary injury resulting from such death, to those persons who may be entitled to such damages when recovered and also damages for the reasonable medical, hospital, funeral and burial expenses for which the estate is liable and reasonable compensation for the pain and suffering, while conscious, undergone by such deceased person during the

9

clear" in *Olney's Estate*, "the survival act was not repealed but was incorporated into the new death act *to form a single ground of recovery* in cases where tortious conduct caused death." *Hawkins*, 415 Mich at 432 (discussing the holding of *Olney's Estate*) (emphasis added). Thus, following the 1939 amendments, actions "based on injuries resulting in non-instantaneous death must simply be brought under the present wrongful death act rather than under the survival act." *Id*. at 434.

Questions very quickly arose concerning the scope of damages available under the newly combined WDA. In *Baker*, the plaintiff argued that "under the 1939 act, as under the old survival act, recovery may be had for loss of probable future earnings without diminution for maintenance costs and without a showing that those seeking recovery sustained a pecuniary loss." *Baker*, 319 Mich at 709. This Court soundly rejected that argument based on several aspects of the 1939 amendments:

> The effect of the 1939 act on the old survival act becomes abundantly clear upon a reading of its provisions. Legislative language could hardly be made more explicit on the subject. Four times the legislative intent on this matter is expressed in the 1939 act:
>
> (1) the title proclaims that for wrongful death or injuries resulting in death the statute is enacted "to prescribe the measure of damages recoverable* * *and to repeal inconsistent acts;"

---

period intervening between the time of the inflicting of such injuries and his death[.] . . .

Sec. 3. Insofar as the provisions thereof are inconsistent with the provisions of act number 38 of the public acts of 1848 as amended by this act, section 32 of chapter 12 of act number 314 of the public acts of 1915, being section 14040 of the compiled laws of 1929 is hereby repealed. [1939 PA 297 (headings omitted).]

(2) section 1 reads in part: "all actions for such death, or injuries resulting in death, shall hereafter be brought only under this act;"

(3) section 2 limits damages to (a) what the court or jury shall deem fair and just with reference to pecuniary injuries to the surviving spouse or next of kin, (b) reasonable medical, hospital, funeral and burial expenses, (c) reasonable compensation for conscious pain and suffering;

(4) section 3 expressly repeals the survival act insofar as its provisions are inconsistent with this act.

The conclusion is inescapable that it was precisely in the field of damages, in those cases in which decedent survived his injuries, that the legislature attempted to effectuate a change, not only as to the distribution but, particularly, as to what shall constitute the elements thereof. [*Id.* at 713 (emphasis omitted).]

In other words, the Legislature unequivocally repealed the statutory grounds for an estate to recover anything that was not specifically included in the damages provision of the post-1939 WDA.  See also *Hawkins*, 415 Mich at 433 n 4 (observing that, in *Baker*, this Court "decided that the repeal of inconsistencies went only to the measure of damages").  Thus, after the 1939 amendment, this Court held that the WDA's damages provision provided an exclusive list of the types of damages that could be recovered for injuries resulting in death, regardless of whether the decedent's death was instantaneous or sounded as a survival action.  The newly combined WDA "specifically divide[d] the damages recoverable into three classes": (1) "pecuniary injury;" (2) "reasonable medical, hospital, funeral and burial expenses;" and (3) "the pain and suffering" of the decedent before death.  *Baker*, 319 Mich at 710, quoting *Olney's Estate*, 309 Mich at 83-84 (quotation marks omitted).

The Court then asked whether the damages that the plaintiff sought—the decedent's future earnings—fit into any of those classes.  It found an easy answer:

Assuredly not. In the *Olney Case* we recognized that, beyond compensation to a husband for loss of his wife's services, the right to recover for pecuniary loss must be predicated upon the existence of some next of kin having a legally enforceable claim to support or maintenance by [the] deceased. [*Baker*, 319 Mich at 714.]

Rather, with respect to the decedent's possible future income, only the damages associated with the pre-1939 death act were recoverable, i.e., loss of financial support.[13]

## B. LATER AMENDMENTS AND THE COURT OF APPEALS' DECISION IN *DENNEY*

The Legislature added the word "including" to the WDA in 1971, and it made several other changes to the statute that are shown in boldface and strikethrough, below:

> [I]n every [survival or death] action the court or jury may give such damages, as, the court or jury, shall deem fair and just, ~~with reference to the pecuniary injury resulting from such death,~~ **under all of the circumstances** to those persons who may be entitled to such damages when recovered ~~and also~~ **including** damages for the reasonable medical, hospital, funeral and burial expenses for which the estate is liable and reasonable compensation for the pain and suffering, while conscious, undergone by such deceased person during the period intervening between the time of the inflicting of such injuries and his death. **The amount of damages recoverable by civil action for death caused by the wrongful act, neglect or fault of another may also include recovery for the loss of the society and companionship of the deceased.** [See MCL 600.2922(2), as amended by 1971 PA 65.]

---

[13] The dissenting justice in *Olney's Estate* apparently agreed that damages under the newly combined WDA were limited to the damages expressly provided and, accurately predicting the holding in *Baker* a few years later, observed that "[t]he [1939] amendment makes no provision for recovery of the loss of earnings of the deceased either prior to his death or afterwards." *Olney's Estate*, 309 Mich at 77 (SHARPE, J., dissenting in part).

The Legislature amended the WDA again in 1985, bringing it substantially into its current form and adding "loss of financial support" as a type of recoverable damages. See MCL 600.2922(6), as amended by 1985 PA 93.[14]

But it was not until 2016 that the Court of Appeals expanded the categories of damages available under the current version of the WDA, holding in *Denney* that damages for lost future earnings are recoverable. *Denney*, 317 Mich App at 732. *Denney* concerned an action to recover damages stemming from a motorcycle accident. The plaintiff argued that damages for lost wages and lost earning capacity were recoverable under the highway exception to the governmental tort liability act (GTLA), MCL 691.1401 *et seq*. *Id*. at 729. The panel agreed, but its reasoning was scant and relied heavily on *Thorn v Mercy Mem Hosp Corp*, 281 Mich App 644; 761 NW2d 414 (2008), which held that the word "including" in MCL 600.2922(6) " 'indicates an intent by the Legislature to permit the award of any type of damages, economic and noneconomic, deemed justified by the facts of the particular case.' " *Denney*, 317 Mich App at 731, quoting *Thorn*, 281 Mich at 651. *Denney* reasoned that "economic damages include 'damages incurred due to the loss of the ability to work and earn money . . . .' " *Denney*, 317 Mich App at 732, quoting *Hannay v Dep't of Transp*, 497 Mich 45, 67; 860 NW2d 67 (2014).[15] The panel therefore concluded

---

[14] The WDA was also amended in 2000 and 2005, but neither party argues that these amendments are substantive or otherwise impact the proper resolution of this case. See 2000 PA 56 and 2005 PA 270.

[15] Following *Thorn*, the Court of Appeals in *Denney* relied heavily on *Hannay* to determine what type of damages are available under the WDA. See *Denney*, 317 Mich App at 733-735. That reliance, however, was misplaced because *Hannay* did not involve a claim under the WDA.

13

that damages for lost future earnings are allowed under the WDA. *Id*.[16] *Denney* did not provide any meaningful additional analysis to support its holding that lost future earnings are recoverable under the WDA. And neither *Thorn* nor *Denney* discussed this Court's opinion in *Baker*. This Court denied leave in *Denney*. See *Denney v Kent Co Rd Comm*, 500 Mich 997 (2017).[17]

### C. *BAKER* HAS NOT BEEN SUPERSEDED BY INTERVENING CHANGES IN THE LAW

In this case, the Court of Appeals panel held that *Baker* was superseded by an intervening change in the law. In particular, the Court of Appeals observed that the version of the WDA in effect when *Baker* was decided "lacked the 'including' language in the current statute." *Daher*, 344 Mich App at 530. The Court of Appeals noted its previous holding in *Denney* that "although lost earnings are not explicitly specified in MCL 600.2922(6), the Legislature's use of the word 'including' before the enumerated list of the kinds of damages available meant that the list is not exhaustive[.]" *Id*. at 527, citing *Denney*, 317 Mich App at 731-732.[18] Believing it was bound by *Denney*, the Court of

---

[16] The Court of Appeals further held that the highway exception to the GTLA permitted the derivative lost-earnings claim. *Denney*, 317 Mich App at 736.

[17] Although we denied leave to appeal in *Denney*, we note that "the defendants [in *Denney*] did not address *Baker* until their reply brief in this Court and did not present the historical tensions in the statute that help to explain the potential conflict between *Denney* and *Baker*." *Touma v McLaren Port Huron*, 508 Mich 976, 976 n 1 (2021) (VIVIANO, J., dissenting).

[18] As discussed previously, *Denney* relied on *Thorn*'s observations about the addition of the word "including" in the 1971 amendment. *Denney*, 317 Mich App at 731. Plaintiffs echo this argument. But while *Thorn* did discuss several decisions from this Court, it did not meaningfully consider the statutory history of the WDA and its relationship with the common law.

14

Appeals therefore held that "plaintiffs may recover for Jawad's lost future earnings to the same extent Jawad could have recovered those damages had he survived." *Daher*, 344 Mich App at 531.

In order to determine the impact of the 1971 and 1985 amendments of the WDA, it is important to recall its statutory history as interpreted by this Court over the past 175 years. See *Great Oaks*, 507 Mich at 227. As noted above, the common law did not allow for recovery of any damages following death. The survival act and death act each abrogated the common-law rule, but the claims under each act "were mutually exclusive and the measure of damages was substantially different." *Hawkins*, 415 Mich at 430. As it pertained to the decedent's earnings, a survival action allowed damages for "loss of earnings sustained by deceased from the time of the accident until death and prospective loss from the date of death throughout the life expectancy of the deceased," while a death

---

Quoting *Wesche*, 480 Mich at 91, *Thorn* also explained that "[f]or symmetry and continuity, if 'the limitation on damages . . . must apply in [a] wrongful-death action,' so too must the damages that are available in the underlying claim be recognized." *Thorn*, 281 Mich App at 659 (second alteration in *Thorn*). However, *Thorn* provided no support for its assertion that "symmetry and continuity" are valid reasons to expand the types of damages that are recoverable under the WDA. As *Wesche* recognized, the WDA is a filter through which the action must pass, which includes the damages provision. See *Wesche*, 480 Mich at 88 (explaining that the WDA "is essentially a 'filter' through which the underlying claim may proceed").

*Thorn* further justified its conclusion on the ground that "[c]ommon sense would dictate the opposite—the more egregious the injury, the greater the damages." *Thorn*, 281 Mich App at 660. Regardless of whether one agrees with that proposition, the Legislature made a policy decision to preclude such damages for survival actions in 1939 and has never allowed such damages for death actions.

In any event, *Thorn* did not even pertain to future earnings; rather, it held that the children of the decedent in a wrongful death action could recover loss-of-services damages.

15

action only allowed damages for "actual pecuniary loss suffered by one entitled to or receiving support from the deceased . . . ." *Olney's Estate*, 309 Mich at 76-77 (SHARPE, J., dissenting in part). And when the Legislature combined the acts in the 1939 amendments, it made a clear policy choice to allow only death act damages. *Baker*, 319 Mich at 713. In doing so, the Legislature revived the common-law rule barring recovery of damages for survival actions to the extent that they were not included in the 1939 amendments, such as loss of future earnings. See *People v Reeves*, 448 Mich 1, 8; 528 NW2d 160 (1995) ("The repeal of a statute revives the common-law rule as it was before the statute was enacted.").

Thus, for the 1971 amendments to abrogate the common-law rule and thereby allow damages for future earnings in both survival actions and death actions, the amendments must be clear on this point and "speak in no uncertain terms." *Hoerstman Gen Contracting, Inc v Hahn*, 474 Mich 66, 74; 711 NW2d 340 (2006).[19] As this Court explained long ago:

> In all doubtful matters, and where the expression is in general terms, statutes are to receive such a construction as may be agreeable to the rules of the common law in cases of that nature; for statutes are not presumed to make any alteration in the common law, farther or otherwise than the act expressly declares. Therefore, in all general matters the law presumes the act did not intend to make any alteration; for, if the parliament had had that design, they would have expressed it in the act. [*Bandfield v Bandfield*, 117 Mich 80, 82; 75 NW 287 (1898) (quotation marks and citation omitted).]

We first address plaintiffs' argument that the deletion of the "pecuniary injury" phrase undermined the holding in *Baker*. That is, plaintiffs argue that the deletion of the phrase "with reference to the pecuniary injury resulting from such death" in the 1971

---

[19] We note that, if the 1971 amendments provided for future-earnings damages, they would have effectively abrogated the common law for purposes of both the survival act and the death act—in the latter case providing such damages under the death act for the first time ever.

16

amendment demonstrates the Legislature's intent to transform the WDA's exclusive list of damages, as described in *Baker*, into a nonexhaustive list. As an initial matter, we believe that argument takes a constricted view of the analysis in *Baker*. While it is true that *Baker* rejected the plaintiff's claim for future-earnings damages because they were not a "pecuniary injury," the threshold determination in *Baker* was that the WDA only provides for enumerated damages. And that threshold determination was based on the Legislature's policy decision to establish a single provision setting forth the damages available for claims under the survival act and death act, which had the effect of limiting the damages available for survival actions. See *Baker*, 319 Mich at 713 ("The conclusion is inescapable that it was precisely in the field of damages, in those cases in which decedent survived his injuries, that the legislature attempted to effectuate a change, not only as to the distribution but, particularly, as to what shall constitute the elements thereof."). In the 1939 amendments that was accomplished by the requirement in § 1 that "all actions for such death, or injuries resulting in death, shall hereafter be brought only under this act," and § 3 of the act, which "expressly repeal[ed] the survival act insofar as its provisions are inconsistent with [the newly combined WDA]." *Id*. (quotation marks, citation, and emphasis omitted). The requirement that survival actions be brought pursuant to the provisions of the WDA was in effect when the 1971 amendments were adopted and continues to be the law in our state. See MCL 600.2921 (stating that "[a]ll actions and claims survive death" and that "[a]ctions on claims for injuries which result in death shall not be prosecuted after the death of the injured person except pursuant to [MCL 600.2922]"). And that is why this Court has continued to describe the WDA as "essentially a 'filter' through which the underlying claim may proceed." *Wesche*, 480 Mich at 88.

17

The removal of the "pecuniary injury" phrase was not intended to change the relationship between survival actions and the WDA, i.e., that survival actions were subject to the damages limitations and other requirements of the WDA. Instead, we have held that the deletion of this phrase and the addition of the provision allowing damages for "loss of . . . society and companionship," which we described as "[t]he major revision" of the 1971 amendments, "can only be viewed as a clear rejection of" this Court's holding in *Breckon v Franklin Fuel Co*, 383 Mich 251; 174 NW2d 836 (1970), that damages for loss of companionship were not allowed under the WDA because they did not qualify as a "pecuniary injury." *Crystal v Hubbard*, 414 Mich 297, 322; 324 NW2d 869 (1982).[20]

Plaintiffs next argue that the addition of "under all of the circumstances"[21] in the 1971 amendments in place of the "pecuniary injury" phrase shows that the Legislature intended to broaden the types of damages that could be recovered. But that argument is also unavailing. The phrase "under all of the circumstances" appeared after the phrase "in every such action the court or jury may give such damages, as, the court or jury, shall deem fair and just," which invokes the jury's role of determining the *amount* of damages, not the

---

[20] See also *Crystal*, 414 Mich at 322 ("Legislative reaction to the *Breckon* opinions, majority and dissenting, was swift and decisive and is embodied in 1971 PA 65, now codified in MCL 600.2922 . . . , the statutory provision presently at issue."); *Wood v Detroit Edison Co*, 409 Mich 279, 286; 294 NW2d 571 (1980) ("The amendments followed closely this Court's decision in *Breckon* . . . , which held that loss of companionship was not a pecuniary injury for purposes of the wrongful death act."). Indeed, one justice described *Breckon* as "[t]he *complete* focus" of the amendments because "[t]he legislation clearly and unambiguously provided a remedy that this Court refused to provide." *Id*. at 294-295 (opinion by BLAIR MOODY, JR., J.) (emphasis added).

[21] This language was revised to provide "under all the circumstances" in the 1985 amendments. See MCL 600.2922(6), as amended by 1985 PA 93.

*type* of damages. MCL 600.2922(2), as amended by 1971 PA 65. See *Kelly v Builders Square, Inc*, 465 Mich 29, 36; 632 NW2d 912 (2001) ("We cannot substitute our opinion for that of the jury as to the proper amount of damages to allow plaintiff for pain and suffering.") (quotation marks and citation omitted). In contrast, it is the role of the court to determine what type of damages are available under a statute. See *Price*, 493 Mich at 242 ("Whether noneconomic damages are recoverable for the negligent destruction of real property presents a question of law . . . ."). Indeed, when this Court interpreted the meaning of the phrase "under all of the circumstances," it did so in the context of deciding which evidence the jury could consider in determining the amount of damages for loss of society and companionship. *Wood v Detroit Edison Co*, 409 Mich 279, 286; 294 NW2d 571 (1980) (holding that evidence of a surviving spouse's remarriage may not be used to determine damages for loss of society and companionship). And, even in this context, the Court did not believe the phrase superseded *Bunda v Hardwick*, 376 Mich 640, 656; 138 NW2d 305 (1965), a prior decision holding that such evidence was inadmissible. See *Wood*, 409 Mich at 286-287. Thus, we have previously rejected the notion that the addition of this phrase broadly negated previous limitations on the damages that could be recovered under the WDA.

That brings us to the addition of the word "including," which the Court of Appeals majority held means that the types of damages listed in the statute are nonexhaustive. Although the 1971 amendments have been closely scrutinized, the word "including" received little attention until the Court of Appeals opinion in *Thorn*. To be sure, as "we have stated previously, 'including' is a term of enlargement, not limitation." *NACG Leasing v Dep't of Treasury*, 495 Mich 26, 31; 843 NW2d 891 (2014); see also *Reading*

19

*Law: The Interpretation of Legal Texts* (St. Paul: Thomson/West, 2012), p 132 ("[T]he word *include* does not ordinarily introduce an exhaustive list . . . ."). But we have also held that "[w]hen used in the text of a statute, the word 'includes' can be used as a term of enlargement or of limitation, and the word in and of itself is not determinative of how it is intended to be used." *Frame v Nehls*, 452 Mich 171, 178-179; 550 NW2d 739 (1996).[22]

Given the extensive statutory history of the survival act and the WDA and the caselaw interpreting them, we are not persuaded that, by inserting the word "including" into the statute as part of the 1971 amendments, the Legislature intended to convert what had long been an exhaustive list into an open-ended list of damages types left entirely to the discretion of the jury. To effect such a sea change in the WDA—one that would amount to a further abrogation of the common law (as noted above)—the Legislature must be clear and "speak in no uncertain terms." *Hoerstman Gen Contracting*, 474 Mich at 74. The Legislature knows how to speak with clarity when it wants to add a type of damages to the WDA, and it did so in 1971 when it added damages for "loss of . . . society and companionship," 1971 PA 65, and again in 1985 when it added damages for "the loss of financial support," 1985 PA 93. The addition of the word "including" is obviously not a similarly clear indication of the Legislature's intent.

---

[22] See also *Reading Law*, p 133 ("Even though the word *including* itself means that the list is merely exemplary and not exhaustive, the courts have not invariably so held.") (quotation marks and citation omitted); 2A Singer, Sutherland Statutory Construction (7th ed), § 47.7 (November 2023 update) ("A statutory definition declaring what something 'includes' is more susceptible to extension by construction than a definition declaring what a term 'means.' The word 'includes' is usually a term of enlargement, and not of limitation, and conveys the conclusion that there are other items includable, though not specifically enumerated.").

As discussed above, the 1939 amendments clearly limited damages for survival-act claims to those damages expressly included in the WDA. Despite the addition of "including," that structure remained in place with the 1971 amendments. "[T]he word ['including'] in and of itself is not determinative of how it is intended to be used." *Frame*, 452 Mich at 178-179. In light of the statutory history and caselaw discussed above, we do not believe that the insertion of "including" demonstrates that the Legislature acted with sufficient clarity to overrule *Baker* and abrogate the common law.[23]

A few additional points support our conclusion. First, the fact that the Legislature explicitly added damages for loss of the society and companionship of the deceased in the 1971 amendments undercuts plaintiffs' argument that the Legislature added "including" at the same time to make the statute open-ended. Why, one wonders, would the Legislature go to this trouble of specifying this new damages category if the word "including" already accomplished the task? Next, plaintiffs' argument proves too much. As noted above, in our legal system, the jury determines the amount of damages, *Kelly*, 465 Mich at 36, and the court determines what types of damages are available. See *Price*, 493 Mich at 242. Allowing the jury to have complete discretion as to the types of damages that are available would be quite a departure from this legal norm.

---

[23] In order to show that a previously exhaustive list is now to be construed as nonexhaustive, we would expect the Legislature to use more definitive language, such as "*including but not limited to*—or either of two variants, *including without limitation* and *including without limiting the generality of the foregoing.*" *Reading Law*, p 132. Our opinion should not be interpreted to mean that these "longer, more explicit variations" are always required, *id*. at 133; only that more explicit language is required in this case given its unique facts and the extensive statutory history of the WDA and the caselaw interpreting it.

Finally, our reading of the statute also finds support in the 1985 amendments, which, as noted above, added another specific type of damages to the WDA: loss of financial support. "Under [the negative-implication] canon of statutory construction, the express mention of one thing implies the exclusion of other similar things." *Comerica, Inc v Dep't of Treasury*, 509 Mich 204, 218; 984 NW2d 1 (2022). The canon "does not apply without a strong enough association between the specified and unspecified items." *Id*.

Here, such an association exists between "loss of financial support" and "loss of future earnings." Both types of damages involve money that the decedent would have made, but damages for "loss of financial support" based on those earnings are limited to the "actual pecuniary loss suffered by one entitled to or receiving support from the deceased . . . ." See *Olney's Estate*, 309 Mich at 76 (SHARPE, J., dissenting in part). These two categories of damages have been the subject of a long-simmering dispute under the survival act and WDA. The fact that the Legislature adopted only one of them in the 1985 amendments indicates that it was doing so to the exclusion of damages for a decedent's future earnings (or at least to clarify that they were not permitted).

For all of these reasons, we conclude that *Baker* was not superseded by intervening changes in the law.

## D. THE *WESCHE* DECISION DID NOT IMPLICITLY OVERRULE *BAKER*

Lastly, we have little trouble dispensing with the Court of Appeals' finding that *Wesche* "necessarily—if implicitly—overruled the fundamental principle underlying the analysis and holding in *Baker*." *Daher*, 344 Mich App at 530. The Court of Appeals reasoned that the WDA "used to be construed [at the time that *Baker* was decided] as

22

providing a new cause of action for the benefit of the beneficiaries." *Id*. (emphasis omitted). In *Wesche*, this Court held that this was "a repudiated understanding of the [WDA]" and that "it is now clear that the underlying claim survives by law and that the limitations in the underlying cause of action apply to the wrongful-death action." *Wesche*, 480 Mich at 91.[24]

Other than its conclusory assertion that *Baker* was more aligned with the prior understanding of the WDA—an assertion that is subject to some doubt[25]—the Court of Appeals never explained why it believed that this new understanding affected the validity of *Baker*'s holding. Nor is it apparent to us. Regardless of whether the WDA provides a new action or only one that survives by law, the WDA serves as a "filter" through which the underlying action must proceed, *Wesche*, 480 Mich at 88, and controls which damages are available. *Wesche* did not undermine our holding in *Baker.*

## IV. CONCLUSION

The Court of Appeals erred by failing to apply *Baker*. *Baker*'s holding was never explicitly superseded by the Legislature or clearly overruled by this Court. Therefore, the Court of Appeals was bound to follow it.[26] We reaffirm *Baker*'s holding that lost-earning-

---

[24] *Wesche* overruled *Endykiewicz v State Hwy Comm*, 414 Mich 377, 382; 324 NW2d 755 (1982), but never discussed or even cited *Baker*.

[25] For example, *Baker* extensively cited *Olney's Estate* and noted its holding that "*there is survival under the survival act* regardless of whether the death be that of the injured party or of the tortfeasor or of both; *that this is in no wise inconsistent with the 1939 act* and that, therefore, in that respect at least, the survival act continues in force." *Baker*, 319 Mich at 710 (emphasis added).

[26] See *Associated Builders & Contractors v Lansing*, 499 Mich 177, 191-192; 880 NW2d 765 (2016) ("The Court of Appeals is bound to follow decisions by this Court except where those decisions have *clearly* been overruled or superseded *and is not authorized to*

23

capacity damages are not available under the WDA. We overrule *Denney* and *Thorn* to the extent that they are inconsistent with this opinion.[27] We reverse the Court of Appeals' judgment, vacate Part II(B) of its opinion, and remand this case to the Wayne Circuit Court for further proceedings that are not inconsistent with this opinion.

David F. Viviano
Elizabeth T. Clement
Brian K. Zahra
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

---

*anticipatorily ignore our decisions where it determines that the foundations of a Supreme Court decision have been undermined.*").

[27] We also overrule *Palomo v Dean Transp, Inc*, ___ Mich App ___; ___ NW3d ___ (2023) (Docket No. 357285), to the extent it is inconsistent with this opinion because it is a published opinion that followed the holding of *Denney* that damages for lost earnings are recoverable under the WDA.

24